Minute Order Form (06/97)

JS-6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3182 | **DATE** | 8/13/2004 |
| **CASE TITLE** | Gregory Shell vs. United States of America | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Shell's Motion for Default Judgment and his Petition for Habeas Corpus are denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 16 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 12 |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | date mailed notice | |
| WAP | courtroom deputy's initials | 2004 AUG 13 PM 3:18 Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT **FILED**
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AUG 1 3 2004

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

GREGORY SHELL,

      Petitioner,

    v.

UNITED STATES OF AMERICA,

      Respondent.

Case No. 03 C 3182

Hon. Harry D. Leinenweber

**DOCKETED**

AUG 1 6 2004

## MEMORANDUM OPINION AND ORDER

Petitioner Gregory Shell (hereinafter, "Shell") filed a petition to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 ("§ 2255"), and a motion for default judgment on that petition.

### I. INTRODUCTION

In 1998, Shell was convicted of numerous offenses relating to his participation in activities of the Gangster Disciples, a large and vicious street gang that sold large quantities of cocaine, heroin, and other drugs in Chicago. Shell served on the gang's so-called "board of directors," and was the gang's second-in-command. He was the highest-ranking non-incarcerated gang officer, and orchestrated the gang's day-to-day operations.

Shell was convicted of engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848; conspiracy to possess with intent to distribute cocaine, cocaine base, heroin, and marijuana in violation of 21 U.S.C. § 846; distribution of narcotics in violation of 21 U.S.C. § 841(a)(1); use of minors in furtherance



of the conspiracy in violation of 21 U.S.C. §§ 861(a)(1), 861(a)(2); use of telephones in furtherance of the conspiracy in violation of 21 U.S.C. § 843(b); and use of firearms during and in relation to the conspiracy in violation of 21 U.S.C. § 924(c). For these convictions, Shell received a sentence of life imprisonment. Shell's convictions were affirmed on direct appeal. *United States v. Hoover*, 246 F.3d 1054 (7th Cir. 2001).

The government's main evidence against Shell came from recordings of intercepted conversations between Shell and Larry Hoover ("Hoover"), the leader and "chairman of the board" of the Gangster Disciples, who was incarcerated at the Vienna Correctional Center in Vienna, Illinois. Pursuant to 18 U.S.C. § 2518(3), the government obtained court authorization to monitor and record Hoover's conversations with certain prison visitors, including Shell. As Vienna inmates received visitors in an outdoor picnic area, the government accomplished this monitoring by concealing a transmitter in the badge a visitor was required to wear while in the institution. Since Shell frequently visited Hoover at the Vienna Correctional Center, the government used this concealed transmitter to record numerous conversations between Shell and Hoover discussing the gang's drug conspiracy.

In May 2003, Shell filed this petition for post-conviction relief pursuant to 28 U.S.C. § 2255. Shell's petition alleges four discernable claims which Shell believes entitle him to relief under § 2255: (1) the trial court erred in admitting the intercepted

conversations because the government's placement of "listening bugs" on Shell's person, without Shell's consent, violated his rights under both the Fourth Amendment to the United States Constitution and 18 U.S.C. § 2511(2)(c); (2) the trial court erred in admitting the intercepted conversation because the government's application to intercept oral communications between Hoover and Shell, and the resulting court order permitting them, did not sufficiently specify where the communications would be intercepted creating both statutory violations and violations of the Fourth Amendment; (3) the court order authorizing the interception of conversations between Hoover and Shell was void because the government deliberately omitted material information as to the method of interception from its application seeking authorization, such that the issuing judges would not have authorized the surveillance in the absence of the omission; and (4) Shell's trial and appellate counsel were constitutionally ineffective because they failed to pursue the above issues concerning the validity of the government's placement of "listening bugs" on Shell's person under the Fourth Amendment and § 2511(2)(c).

In August 2003, this Court ordered the government to respond to Shell's petition pursuant to 28 U.S.C. § 2255 by October 15, 2003. The government failed to do so. This court subsequently ordered the government to respond by January 5, 2004. The government again failed to respond. Shell filed his motion for default judgment premised on the government's failure to respond to his § 2255

petition on March 30, 2004. The government responded to the petition on April 26, 2004.

## II. STANDARD OF REVIEW

Section 2255 provides that "a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or Laws of the United States . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence." To receive relief under § 2255, a prisoner must show a "fundamental defect which inherently results in a complete miscarriage of justice," *United States v. Addonizio*, 442 U.S. 178, 185 (1979), or "an omission inconsistent with the rudimentary demands of fair procedure," *Hill v. United States*, 368 U.S. 424, 428 (1962).

## III. DISCUSSION

### A. Default Judgment

While the government promptly responded to Shell's § 2255 petition after it became aware that its filing did not occur in the time prescribed by the Court, the government missed two briefing schedules eventually turning in its response brief nearly nine months after the Court originally asked for it. Although a court is usually justified in entering a default judgment against a party that fails to respond after notice in a civil case, *Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir. 1984); see FED. R. CIV. P. 55, "a default judgment, without full inquiry into the facts, is especially rare when entered against a custodian in a habeas corpus proceeding," *Ruiz v. Cady*, 660

F.2d 337, 340 (7th Cir. 1981), Courts are reluctant to grant default judgments without reaching the merits of the claim in habeas corpus cases because such judgments would cause the public at large to suffer by bearing either the risk of releasing prisoners that were duly convicted or the costly and difficult process of retrying them rather than impose hardship on the defaulting party. *See id.* (acknowledging that default judgments in habeas corpus proceedings might compromise the public's right to protection). Although default judgment in a habeas corpus proceeding is an extreme remedy, the Seventh Circuit permits a trial court to employ it as a sanction against a respondent's unwarranted delay. *See id.* Delays that are both long and inadequately explained are presumed to be unwarranted. *See id.* Under this framework, the trial court has discretion in determining whether a default judgment for the petitioner is the appropriate remedy for the government's delay in a habeas corpus proceeding. *See id.* at 341.

The government's response to Shell's § 2255 petition asserts that the counsel for the government assigned to the § 2255 petition was not the counsel of record for the trial or direct appeal and had no record of the briefing schedule until Shell filed the motion for default judgment. While the Court concludes that this explanation for the delay is not adequate, this finding does not require the Court to grant a default judgment for Shell. *See id.* Given the strong policy reasons against granting a default judgment for the petitioner in a habeas corpus proceeding, the Court finds that the

circumstances of this case do not warrant the extreme remedy of granting a default judgment. When a petitioner files a motion for default judgment alleging the government's failure to respond to a § 2255 petition, and the Court subsequently accepts the government's late reply, the claimed grounds for default judgment are eliminated. *See Irorere v. United States*, No. 01 C 332, 2002 U.S. Dist. LEXIS 18117, at *12 (N.D. Ill. September 24, 2002); *United States v. Messino*, No. 97 C 2767, 1998 U.S. Dist. LEXIS 16573, at *2 (N.D. Ill. October 13, 1998). Accordingly, the Court denies Shell's motion for default judgment.

### B. Habeas Corpus

#### 1. Consent

Shell argues that the Fourth Amendment required the government to obtain his consent before requiring him to wear a badge containing a transmitter that intercepted his conversations with Hoover at the prison. However, the Fourth Amendment only protects citizens from secret electronic surveillance in the absence of both a warrant and the consent of a participant in the monitored activity. *See United States v. Nerber*, 222 F.3d 597, 606 (9th Cir. 2000). Here, pursuant to 18 U.S.C. § 2518(3), the government obtained a court order from a United States District Judge authorizing it to monitor and record Hoover's conversations with particular visitors including Shell. Shell does not contend that the government lacked probable cause for this warrant. Therefore, Shell's consent was not required. The Court notes that it has reached the identical conclusion in previous

litigation involving other members of the Gangster Disciples. *United States v. Jackson*, No. 2004 U.S. Dist. LEXIS 6929, at *7 (N.D. Ill. April 21, 2004). *Branch v. United States*, 2004 U.S. Dist. LEXIS 5836, at *8 (N.D. Ill. April 6, 2004).

Shell also appears to contend that method of surveillance, the covert placement of a transmitter on a visitor's badge worn on his person, was a severe intrusion on his privacy such that consent was required irrespective of judicial authorization. While a method of surveillance may be banned outright if it intrudes on personal privacy to an extent disproportionate to the likely benefits from obtaining fuller compliance with the law, see *United States v. Torres*, 751 F.2d 875, 882-83 (7th Cir. 1984), this is not the case here. Shell's conversations with Hoover at the prison directly involved and facilitated the operation of a vicious street gang's extensive drug operation. As the Fourth Amendment permits electronic surveillance of conversations, the incremental increase in invasion of privacy in placing the transmitter on a badge worn by a visitor as opposed to elsewhere in the visiting area is minuscule. *See id.* at 878. A visitor has no right to be let alone while visiting a prisoner to conduct the business of a violent street gang. *See id.* at 883. Thus, the social gain from monitoring the conversations between Hoover and Shell outweighs the intrusion of privacy in this case. Accordingly, the Court finds that Shell's argument that the Fourth Amendment required his consent to the surveillance in this case is without merit.

In addition, Shell argues that the surveillance in this case violated his statutory rights under 18 U.S.C. § 2511(2)(c) because he did not consent to it. Section 2511(2)(c) states that "it shall not be unlawful . . . for a person acting under color of law to intercept a wire, oral, or electronic communication . . . where one of the parties to the communication has given prior consent to such interception." This Court has held that "simply because consent makes it lawful to intercept a communication does not by analogy mean that it is always unlawful for the government to intercept a communication without consent of the parties involved in the communication." *Jackson*, 2004 U.S. Dist. LEXIS 6929, at *9. Therefore, Shell's argument that the surveillance violated his statutory rights under § 2511(2)(c) also fails.

### 2. *Particularity*

The Fourth Amendment prohibits general and open-ended search warrants and requires that a search warrant particularly describe both the place to be searched and the persons or things to be seized. *See Dalia v. United States*, 441 U.S. 238, 255 (1979). To reflect this particularity requirement, 18 U.S.C. § 2518(1)(b)(ii) requires that the application and order to intercept oral communications state the "place where the communication is to be intercepted." Shell contends that the government's application to intercept oral communications between Hoover and his visitors, and the resulting court order permitting them, did not sufficiently specify where the communications would be intercepted to satisfy Fourth Amendment and

statutory particularity requirements. This, in Shell's view, is because they described the place to be searched as the visiting room area at the Vienna Correctional Center, not the "bodies" of the visitors.

Under both 18 U.S.C.§ 2518(1)(b)(ii) and the Fourth Amendment, the particularity requirement is satisfied "by identifying [the] location in terms of where a specified individual engages in certain conversation." *United States v. Bianco*, 998 F.2d 1112, 1123-24 (2d Cir. 1993)(quoting *United States v. Ferrara*, 771 F. Supp. 1266, 1291 (D. Mass. 1991)). Here, the government's warrant application specified that the desired conversations between Hoover and named visitors including Shell would take place at the prisoner visitor area at the Vienna Correctional Center in Vienna, Illinois.

Shell argues that the placement of a transmitter in the visitor's badge he wore while at the prison violated this particularity requirement because it led to conversations being intercepted on his "body," which neither the warrant nor the warrant application mentioned. However, even if the Court accepted that the government intercepted conversations on Shell's "body," it did so only while Shell's body was within the confines of the designated prisoner visitor area. Shell does not contend that the government used conversations that occurred outside the visitor area, nor does the record support such a conclusion. The Supreme Court has stated that "the Fourth Amendment does not generally extend to the means by which warrants are executed." *Dalia*, 441 U.S. at 257. Thus, it is

not necessary or practical that a judicial order approving electronic surveillance specifically approve of the particular means by which the surveillance is accomplished. *See id.* As the monitored conversations took place within the prisoner visitor area at the Vienna Correctional Center, the placement of transmitters in the visitor's badge worn by Shell to accomplish the surveillance did not violate the particularity requirement.

### 3. *Omission of Material Information*

Shell also contends that the government's decision to place listing devices on his "body," without being specified in the warrant, voided the warrant itself by constituting a material omission in the government's warrant application. Shell contends that, had the government specified the method of intercepting the conversations, the issuing judge's would never have authorized a warrant.

In seeking a search warrant, "the government may not intentionally or recklessly misrepresent material information to magistrate judges, and misrepresentations encompass omissions." *Supreme Video, Inc. v. Schauz*, 15 F.3d 1435, 1441 (7th Cir. 1994). A defendant must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth" was made by the government in seeking the warrant in order to demonstrate that a search warrant is void due to the use of alleged intentionally or recklessly false information by the

government in procuring the warrant. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).

The government's omission of its method of intercepting conversations did not constitute a misrepresentation. The government is neither required to include the specific means by which a warrant for electronic surveillance is executed in its application, *Dalia*, 441 U.S. at 257, nor required to identify the precise location within a building where electronic surveillance will take place to the judge approving the surveillance. *See United States v. Lambert*, 771 F.2d 83, 91 (6th Cir. 1985). Furthermore, the government's warrant permitted it to make "all necessary surreptitious entries . . . including but not limited to entries to install, maintain, and remove electronic listening devices within the Visitation Area located at the Vienna Correctional Facility." (Tibbetts Aff. at 46.) This Court has held that "based on this language, the scope of the warrant does not preclude the use of wiretaps inside visitors' name-tags for the purpose of intercepting the oral communications occurring in the Visitor Areas of the Vienna Correctional Center." *Branch*, 2004 U.S. Dist. LEXIS 5836, at *8; *see Jackson*, 2004 U.S. Dist. LEXIS 6929, at *8. Thus, as the government's surveillance was within the scope of the warrant authorizing the surveillance, no misrepresentation as to the method of surveillance occurred, and Shell's assertion that the issuing judge would not have issued the warrant had the application describe the means of surveillance is erroneous. Therefore, Shell's claim that the warrant was void for omission of material information

constituting a misrepresentation from the application is without merit.

### 4. Ineffective Assistance of Counsel

Shell alleges ineffective assistance of counsel at both the trial and appellate levels because his attorneys failed to pursue the issues concerning the validity of the government's placement of "listening bugs" on Shell's person under the Fourth Amendment and § 2511(2)(c) that he has raised in this petition at trial or on direct appeal. The Court notes that Shell's counsel at trial and on direct appeal did challenge the electronic surveillance evidence, albeit on somewhat different grounds than Shell asserts in his § 2255 petition, and lost. In any event, if Shell had argued the meritless claims he put forth in his habeas petition at trial or on appeal, they would have been rejected at that time. Therefore, Shell's counsel's failure to raise them did not compromise the fairness of his trial. *See Strickland v. Washington*, 466 U.S. 668 at 691-92 (1984). Accordingly, Shell's argument that his counsel was ineffective for failing to present these claims at trial or on appeal fails.

### 5. Effect of Blakely and Booker on Shell's Sentence

While Shell's petition was pending, but after briefing on his petition was complete, the Supreme Court declared that Washington's state sentencing guidelines violated defendants' Sixth Amendment's right to a trial by jury. *Blakely v. Washington*, ___ U.S. ___, 124 S. Ct. 2531 (2004). Following, *Blakely*, the Seventh Circuit held the

United States Federal Sentencing Guidelines - under which Strawhorn was sentenced - unconstitutional. *United States v. Booker*, ___ F.3d ___, 2004 WL 1535858 at *1, (7th Cir. 2004). Therefore, the Court also briefly considers what effect, if any, *Blakely* and *Booker* have on this petition.

The Court notes that the Seventh Circuit has already rejected extending the holding of *Booker* to cases up on collateral review pursuant to § 2255. *Simpson v. United States*, ___ F.3d ___, 2004 U.S. App. LEXIS 14650 at *7 (7th Cir. 2004). *Simpson* did, however, dismiss its petitioner's *Blakely/Booker* argument without prejudice, noting that the Supreme Court has yet to decide whether or not *Blakely* applies to habeas petitions. *See id.* Therefore, although Shell does not technically make a *Blakely* or *Booker* claim, any such claim would be dismissed without prejudice within the Seventh Circuit.

### IV. CONCLUSION

For the reasons stated above, Shell's Motion for Default Judgment and his Petition for Habeas Corpus are denied.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: August 13, 2004

- 13 -